**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KRISTAL MIZE,** on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| **INTERNATIONAL BUSINESS MACHINES CORPORATION, JOHNSON & JOHNSON HEALTH SYSTEMS, INC. and JANSSEN CAREPATH** | |
| Defendants. | |

**INTRODUCTION**

1.      Plaintiff Kristal Mize ("Plaintiff"), individually and on behalf of all others similar situated ("Class Members"), brings this Class Action Complaint against Defendant IBM (hereinafter "IBM"), a New York corporation, Johnson & Johnson Health Services, Inc., a New Jersey corporation (hereinafter "Johnson & Johnson"), and Janssen CarePath, a New Jersey Corporation (hereinafter "Janssen" (collectively, "Defendants")). Plaintiff seeks damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of counsel, and facts that are a matter of public record.

2.      Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' protected health information ("PHI") and personal identifiable information ("PII"), including names, addresses, dates of birth, medical records, health insurance plan number IDs, and claims data (including

diagnoses listed on claims) (cumulatively, "PHI/PII" or "Private Information") from an unauthorized third party.[1]

3.      This class action arises out of a targeted cyberattack against Defendants that allowed an unauthorized third party to access Defendants' computer systems and data, resulting in the compromise of PHI/PII (the "Data Breach"). Because of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses and/or the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and/or the imminent risk of future harm caused by the compromise of their PHI/PII.

4.      On or about August 2, 2023, Defendants were alerted to a potential unauthorized access to its computer network; and they subsequently, and formally, opened an investigation to uncover the details of the Data Breach. While Defendants claim to have discovered the Data Breach as early as August 2, 2023, Defendants did not inform victims of the Data Breach until they sent notice via U.S. Mail on September 15, 2023. Plaintiff and Class Members were thus wholly unaware of the Data Breach until they received letters from Defendants notifying them of the Data Breach.

5.      The information compromised in the Data Breach is confidential PHI/PII of Defendants' customers.

---

[1] "Personal Identifiable Information" defined as "Information that can be used to distinguish or trace an individual's identity—such as name, social security number, biometric data records—either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual (e.g., date and place of birth, mother's maiden name, etc.)." (personally identifiable information - Glossary | CSRC (nist.gov)) (Last Accessed November 2, 2023); "Private Health Information" defined as "Individually identifiable health information: (1) Except as provided in paragraph (2) of this definition, that is: (i) Transmitted by electronic media; (ii) Maintained in electronic media; or (iii) Transmitted or maintained in any other form or medium. (2) Protected health information excludes individually identifiable health information in: (i) Education records covered by the Family Educational Rights and Privacy Act, as amended, 20 USC. 1232g; (ii) Records described at 20 USC. 1232g(a)(4)(B)(iv); and (iii) Employment records held by a covered entity in its role as employer." (PHI - Glossary | CSRC (nist.gov), Last Accessed November 2, 2023)

6.      Plaintiff brings this class action on behalf of herself and those similarly situated to address Defendants' inadequate safeguarding of Class Members' PHI/PII that Defendants collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their PHI/PII had been subject to the unauthorized access of an unknown third party or precisely what specific type of information was accessed.

7.      Defendants maintained the PHI/PII in a reckless and negligent or grossly negligent manner, leaving such Private Information susceptible to exploitation by an unauthorized third party. In particular, the PHI/PII was maintained on Defendants' computer network in a condition vulnerable to a cyberattack.

8.      The mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Member's PHI/PII was a known risk to Defendants, thus Defendants were on notice that failing to take steps necessary to secure the Private Information from those risks left that sensitive and valuable property in a dangerous condition.

9.      In addition, Defendants failed to properly monitor the computer network and IT systems that contained the Private Information.

10.     Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct – since the PHI/PII that Defendants collected and maintained is now in the hands of cyber criminals.

11.     Armed with the Private Information accessed in the Data Breach, cyber criminals now have free reign to commit a variety of crimes including, *inter alia*, opening new financial accounts in Plaintiff's and Class Member's names, taking out loans in Plaintiff's and Class Member's names, using Plaintiff's and Class Members' names to obtain medical services, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax

returns using Plaintiff's and Class Members' information, obtaining driver's licenses in Plaintiff's and Class Member's names but with another person's photograph, and giving false information to police during an arrest.

12.     Consequently, because of the Data breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now – and in the future – closely monitor their financial accounts to guard against identity theft.

13.     Plaintiff and Class Members may also incur out-of-pocket expenses – purchasing credit monitoring services, credit freezes, credit reports, or other protective measures – to deter and detect identity theft.

14.     By her Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

15.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvement to Defendants' data security systems, future annual audits, and adequate credit monitoring services funded by Defendants. Accordingly, Plaintiff brings this class action against Defendants seeking redress for their unlawful conduct and asserting claims for: (1) negligence; (2) breach of contract; (3) negligence per se; (4) breach of fiduciary duty; and (5) unjust enrichment.

## PARTIES

16.     Plaintiff is and was at all relevant times to this action a resident of the State of Florida and citizen of the State of Florida, residing in Marion County.

17.     Defendant IBM is a New York corporation with a principal place of business located at One Orchard Road, Armonk, NY, 10504.

18.     Defendant IBM provides "infrastructure, software, and consulting services for clients as they pursue the digital transformation of the world's mission-critical businesses."[2]

19.     Defendant Johnson & Johnson Health Care Systems, Inc. is a New Jersey corporation with a principal place of business located at 425 Hoes Lane Piscataway, NJ 08854.

20.     Defendant Johnson & Johnson Health Care Systems Inc. owns Janssen CarePath, which is a patient support program offering "different saving options and resources…to patients to help them learn about, afford, and stay on their medication."[3]

21.     Janssen CarePath is a New Jersey corporation with a principal place of business located at 1125 Trenton-Harbourton Road, Titusville, NJ 08560.

22.     The true names and capacities of additional persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## JURISDICTION AND VENUE

23.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332. Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.

24.     This Court has personal jurisdiction over Defendant IBM because IBM's principal place of business is located at 1 New Orchard Rd, Armonk, New York, 10504. IBM has sufficient

---

[2] IBM, *About IBM: https://www.ibm.com/about?lnk=fab* (Last accessed November 2, 2023).
[3] Janssen Carepath: https://www.janssencarepath.com/ (Last accessed November 2, 2023).

minimum and continuous contacts with this State, has availed itself of the laws of this jurisdiction by manufacturing, marketing, and/or selling products and/or services and/or by accepting and processing payments for those products and/or services within this State.

25.     This Court has personal jurisdiction over Defendant Janssen CarePath, a company owned by Johnson & Johnson Health Care Systems, Inc., which is a New Jersey Corporation with a principal place of business located at 425 Hoes Lanes Piscataway, NJ, 08854. Defendant Janssen CarePath's principal place of business at 1125 Trenton-Harbourton Road, Titusville, NJ 08560. These Defendants routinely conduct business in New York generally and this District, specifically, have sufficient minimum and continuous contacts in this State, have purposefully availed themselves to this jurisdiction by marketing and/or selling products and/or services and/or by accepting and processing payments for those products and/or services within New York.

26.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims took place within this District and/or Defendants have minimum, continuous, and sufficient contacts within this District.

### FACTUAL ALLEGATIONS

### A.  *Janssen, Johnson & Johnson, and IBM's Business and Collection of Plaintiff's and Class Members' Private Information*

27.     As a condition for providing its technology and health services to consumers, Defendants require that their clients, some of whom like the Plaintiff are patients, entrust them with extremely sensitive personal and health information belonging to Plaintiff and Class Members, including PHI and/or PII.

28.     Specifically, Janssen CarePath is a "patient support program."[4] Janssen CarePath "offers different savings options and resources at no cost to patients to help them learn about,

---

[4] Janssen Carepath: https://www.janssencarepath.com/ (Last accessed November 2, 2023).

afford, and stay on their medication."[5] Additionally, Janssen CarePath "provides information about access and affordability support for patients who have been prescribed Janssen medicines."[6] To obtain services from Janssen CarePath, patients must provide their PHI/PII and information pertaining to their insurance coverage plans, cost support options, and medical treatments.

29.    Due to the extremely sensitive and personal nature of the information Defendants acquire and store with respect to their clients' and customers' PHI/PII, Defendants, promise to, among other things: keep the PHI/PII entrusted to them private; comply with industry standards related to data security and the maintenance of their consumers' clients' PHI/PII; inform their clients and customers of their legal duties relating to data security and comply with all federal and state laws protecting the PHI/PII entrusted to them; only use and release their clients' and patients' PHI/PII for reasons that relate to the services they provide; and provide adequate notice to clients' patients if their PHI/PII is disclosed without authorization.

30.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PHI/PII, Defendants assumed legal and equitable duties they owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Member's PII/PHI from unauthorized disclosure and exfiltration.

31.    Plaintiff and Class Members relied on Defendants to keep their PHI/PII confidential and securely maintained and to only make authorized disclosures of this Information, which Defendants failed to do.

**B. *The Data Breach and Defendants' Inadequate Notice to Plaintiff and Class Members***

32.    On August 2, 2023, Defendants discovered suspicious activity on its systems. Defendants claim to have initiated an investigation and taken containment measures at that point,

---

[5] Id.
[6] Id.

but those measures were patently insufficient. Defendants later admitted that third-party hackers had gained access to its systems and to the extremely sensitive PII and PHI of Plaintiff and Class Members. During the Data Breach, the hackers copied and/or exfiltrated substantial amounts of Plaintiff and Class Members' PHI/PII.

33.      Defendants waited more than a month to start providing notice to the individuals impacted by the Data Breach. Specifically, despite identifying the Data Breach on August 2, 2023, Defendants did not notify Plaintiff and Class Members via U.S. Mail until September 15, 2023. Had Defendants provided notice sooner, Plaintiff and Class Members would have been able to take containment steps sooner.

34.      The Notice included, *inter alia*, the claims that the Defendants had learned of the Data Breach on August 2, 2023, and had taken steps to respond. However, the Notice lacked sufficient information on how the breach occurred, what safeguards have been taken since then to safeguard further attacks, and/or where the information hacked exists today.

35.      The Notice of Data Breach" from Defendants ("Notice") notified Plaintiff that Defendants' network had been breached, "involving unauthorized access to personal information contained within a database used on the Janssen CarePath platform."[7] The Notice notified Plaintiff that Defendants' network had been accessed by an unauthorized third party and that Plaintiff's PHI/PII may have been involved in the Data Breach.

36.      Furthermore, Defendant's Notice directed Plaintiff "to remain vigilant" by regularly reviewing her account statements and taking certain steps to protect her PHI/PII and otherwise mitigate her damages.[8]

---

[7] Notice of Data Incident | Janssen CarePath (Last accessed November 2, 2023).
[8] Id.

37.    The Defendant's Notice placed the onus of monitoring and surveillance on the Plaintiff, and other individuals similarly situated, for the issues Defendant created. The Defendant's Notice states: "We encourage you to remain vigilant by regularly reviewing your account statements and explanation benefits from your health insurer or care providers with respect to any unauthorized activity."[9] Additionally, the Defendant's Notice goes on to further state: "If you identify services that you did not receive or other suspicious activity, promptly report that activity to the institution that provided the report."[10]

38.    As a result of the Data Breach, Plaintiff heeded Defendants' warnings and spent her own time trying to contain the consequences of the Data Breach, which included time spent verifying the legitimacy of the Notice and self-monitoring her accounts and credit reports to ensure no fraudulent activity has or had occurred. This time has been forever lost and cannot be reclaimed.

39.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PHI/PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

40.    Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and has anxiety and increased concerns for the loss of her privacy because cybercriminals now have access to use and sell Plaintiff's PHI/PII.

41.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PHI/PII, in combination with her name, being placed in the hands of unauthorized third parties and cyber criminals.

---

[9] Id.
[10] Id.

42.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PHI/PII, in combination with their names, being placed in the hands of unauthorized third parties/cyber criminals.

43.     Plaintiff has a continuing interest in ensuring that her PHI/PII, which, upon, information and belief, remains in Defendants' possession, is protected and safeguarded from future data breaches.

44.     Plaintiff took reasonable steps to maintain the confidentiality of her PHI/PII and relief on Defendants to keep her PHI/PII confidential and securely maintained, and to make only authorized disclosures of this information.

45.     Defendants had and continue to have obligations created by HIPAA, applicable federal and state laws set forth herein, reasonable industry standards, common law, and their own assurances and representations to keep Plaintiff's and Class Members' PHI/PII confidential and to protect such PHI/PII from unauthorized access.

### C.  The Healthcare Sector is Particularly Susceptible to Data Breaches

46.     Defendants were on notice that companies in the healthcare industry are particularly susceptible targets for data breaches.

47.     Defendants were also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems,

perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[11]

48.    Defendants' negligence in safeguarding Plaintiff's and Class Members' PHI/PII is exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

49.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it is a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[12]

50.    The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[13] In 2022, the largest growth in compromises occurred in the healthcare sector.[14]

51.    Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims

---

[11] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (Last accessed November 2, 2023).
[12] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n. (Oct. 4, 2019), *available at*: https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (Last accessed November 2, 2023).
[13] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (Last accessed November 2, 2023).
[14] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (Last accessed November 2, 2023).

were often forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[15]

52.    Almost 50 percent of the victims lost their healthcare coverage because of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.

53.    Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[16]

54.    In particular, heathcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[17]

---

[15] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (Last accessed November 2, 2023).

[16] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (Last accessed November 2, 2023).
[17] Editorial: Why Do Criminals Target Medical Records, HIPAA J. (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/ (Last accessed November 2, 2023).

55.    Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[18] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen,  or unlawfully disclosed in 505 data breaches.[19] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity form Tenable.[20]

56.    As a service provider that has access to individuals' PHI/PII, Defendants knew, or should have known the importance of safeguarding its customers' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include significant costs that would be imposed on Defendants' customers because of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### D. Defendants Failed to Comply with HIPAA

57.    Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendants left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

58.    Defendants' Data Breach resulted from a combination of systemic deficiencies and negligence that indicate Defendants failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendants' Data Breach that

---

[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/ (last accessed November 2, 2023).

[19] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (Last accessed November 2, 2023).

[20] Healthcare Security: Ransomware Plays a Prominent Role in COVID-19 Era Breaches - Blog | Tenable® (Last accessed November 2, 2023).

Defendants either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

59. Plaintiff's and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

60. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information." 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

61. Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

62. Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, because of the Data Breach.

63. Based upon Defendants' Notice to Plaintiff and Class Members, Defendants reasonably believe that Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, because of the Data Breach.

64. Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E because of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

65. Defendants reasonably believe that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR,

Subpart E because of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

66.    Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E because of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

67.    Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E because of the Data Breach.

68.    Defendants reasonably believe that Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E because of the Data Breach.

69.    It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E because of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

70.    It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

71.    After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiff and Class Members in this case, to believe that future

harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

72.    In addition, Defendants' Data Breach could have been prevented if Defendants had implemented HIPAA mandated industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

73.    Defendants' security failures also include, but are not limited to:

a.  Failing to maintain an adequate data security system to prevent data loss;

b.  Failing to mitigate the risks of a data breach and loss of data;

c.  Failing to ensure the confidentiality and integrity of electronic protected health information Defendants create, receive, maintain, and transmit in violation of 45 CFR 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents;

g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.   Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.   Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR 164.306(a)(94); and

k.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

74.    Because Defendants have failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure Defendants approach to information security is adequate and appropriate going forward. Defendants still maintain the PHI and other extremely sensitive PII of its current and former patients, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

**E.  Defendants Failed to Comply with FTC Guidelines**

75.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in

violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

76.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for substantial amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

77.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

78.    The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

79.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to

protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

80.     Defendants were always fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from its failure to do so.

### F.  Defendants Failed to Comply with Industry Standards

81.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

82.     Some industry best practices that should be implemented by businesses dealing with sensitive PHI like Defendants include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all these industry best practices.

83.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

84.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation

PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

85.     Defendants failed to comply with these accepted standards, permitting the Data Breach to occur.

## G. *Defendants Breached Their Duty to Safeguard Plaintiff's and Class Members' Private Information*

86.     In addition to its obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

87.     Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

88.     Defendants breached their obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.   Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

   b.   Failing to adequately protect patients' Private Information;

   c.   Failing to properly monitor its own data security systems for existing intrusions;

d.   Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

e.   Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f.   Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

g.   Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

89.   Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

90.   Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and the theft of Plaintiff's and Class Members' confidential Private Information.

91.   Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What is more, they have been harmed because of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendants.

### H.  Defendants Should Have Known that Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft

92.   The FTC hosted a workshop to discuss "informational injuries," which are that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as

data breaches or unauthorized disclosure of data.[21] Exposure of extremely sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

93.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims or to take over victims' identities to engage in illegal financial transactions under the victims' names.

94.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity or data thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

95.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

---

[21] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (Last accessed November 2, 2023).

Names and dates of birth, combined with contact information like telephone numbers and email addresses, are valuable to hackers and identity thieves as it allows them to access users' other accounts.

96.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

97.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[22] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

98.     Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being

---

[22] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (Last accessed November 2, 2023).

issued in the victim's name. In fact, a study by the Identity Theft Resource Center[23] shows the multitude of harms caused by fraudulent use of PII: ☒

99.     PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[24]

100.     Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

101.     While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[25] PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

102.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial

---

[23] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (Last accessed November 2, 2023).
[24] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (Last accessed November 2, 2023).
[25] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (Last accessed November 2, 2023)..

repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[26]

103.    The ramifications of Defendants' failure to keep client's Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years, if not a lifetime.

104.    Here, not only was sensitive medical information compromised, but Social Security numbers were compromised too. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

105.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[27]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[26] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (Last accessed November 2, 2023).
[27] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* GAO-07-737 Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (Last accessed November 2, 2023).

106.    PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

107.    As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### I.    *Plaintiff's and Class Members' Damages*

108.    Defendants came into possession of Plaintiff Mize's PHI/PII through their services.

109.    In or about 2014, when Plaintiff became a customer at Janssen CarePath to obtain lower drug prices, Defendant required that Plaintiff provide it with substantial amounts of her PHI/PII. Plaintiff chose Janssen CarePath because her medication was previously too expensive. By choosing Janssen CarePath, Plaintiff became a part of its discount program as medication would have costed her more than $100 per month. To become a part of Janssen CarePath's discount plan, Plaintiff provided Janssen CarePath with PHI/PII, including, but not limited to, her Social Security number, financial and income information, insurance information, medical diagnoses and treatments, monthly income, employer information, date of birth, and addresses.

110.    In or around mid-September 2023, Plaintiff received a notice via U.S. Mail and dated September 15, 2023 (the "Notice"), which informed Plaintiff Mize about "an incident involving unauthorized access to personal information contained within a database used on the Janssen CarePath platform, a patient support platform that offers saving options and other patient support resources."[28] The Notice further informed Plaintiff Mize that her PII/PHI may have been accessed during the Data Breach, including "contact information, health insurance information,

---

[28] "Notice of Data Breach", September 15, 2023 – attached.

and information about medications and associated conditions that were provided to the Janssen CarePath application."[29]

111.     The Notice informed Plaintiff Mize what actions she should take to contain the fallout from the Data Breach:

> "We encourage you to remain vigilant by regularly reviewing your account statements and explanation of benefits from your health insurer or care providers with respect to any unauthorized activity. If you identify services that you did not receive or other suspicious activity, promptly report that activity to the institution that provided the report.  Additionally, information on steps that you can take to protect against potential misuse of personal information can be found in enclosed "Additional Resources" document, which we encourage you to review."[30]

112.     Plaintiff suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

113.     Plaintiff would not have provided her PHI/PII to Defendants had she been aware of Defendants' inadequate data security practices to safeguard their clients' and customers' personal and health information from theft, and that those systems were subject to a data breach.

114.     Plaintiff suffered actual injury in the form of having her PHI/PII compromised and/or stolen because of the Data Breach.

115.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PHI/PII – a form of intangible property that Plaintiff entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and, because of, the Data Breach.

---

[29] Id.
[30] Id.

116.    Plaintiff suffered imminent and impending injuring arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her PHI/PII being placed in the hands of criminals.

117.    Plaintiff has a continuing interest in ensuring that her PHI/PII, which remain in Defendants' possessions are protected and safeguarded from future breaches.

118.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching legitimacy of the Data Breach, researching the rationale as to why it took Defendants so long to communicate to her that her PHI/PII were stolen, reviewing financial and credit accounts for any indications of actual or attempted identity theft or fraud.

119.    Plaintiff investigated the Data Breach via the internet to see what occurred and signed up for, and purchased, a credit freeze for her accounts with all three credit bureaus, costing her more than $40. Plaintiff further checked, and continues to monitor, her credit and bank accounts to ensure there was no unauthorized activity, including her USAA and federal benefit accounts. To date, Plaintiff has spent approximately ten hours to mitigate the issue Defendants created.

120.    Plaintiff Mize also suffered actual injury from having her PHI/PII compromised because of the Data Breach in the form of (a) damage to and diminution in the value of her PII and PHI, forms of property that Defendants obtained from Plaintiff; (b) violation of her privacy rights; (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

121.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

122.    In sum, Plaintiff and Class Members have been damaged by the compromise of their PHI/PII in the Data Breach.

123.    Plaintiff and Class Members entrusted their PHI/PII to Defendants to receive Defendants' services.

124.    Plaintiff and Class Members PHI/PII were compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' inadequate data security practices.

125.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

126.    Further, and as set forth above, as a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come. Plaintiff was offered a meager one year of credit monitoring services through Equifax, but Plaintiff has already had issues with having her PII stolen through Equifax.

127.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, and similar costs directly or indirectly related to the Data Breach.

128.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their PHI/PII, since potential fraudsters will likely use such PHI/PII to carry out such targeted schemes against Plaintiff and Class Members.

129.     The PHI/PII maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

130.     Additionally, Plaintiff and Class Members suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for PHI/PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[31] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[32]

131.     As a result of the Data Breach, Plaintiff's and Class Members' PHI/PII, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.

132.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PHI/PII, which is believed to still be in the possession of Defendants, are protected from future breaches by the implementation of more adequate data security measures and safeguards, including

---

[31] Data Brokers & Data Brokerage (kaspersky.com) (Last accessed November 2, 2023)
[32] Nielsen Panel Will Pay You $50 to Share Your Internet History This Year (thepennyhoarder.com) (Last accessed November 2, 2023)

but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its customers is not accessible online, that access to such data is password-centered, and that such data is properly encrypted.

133.    As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

134.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to the Federal Rule of Civil Procedure 23.

135.    Specifically, Plaintiff proposes the following Class (referred to herein as the "Class"), subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information accessed and/or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

136.    Excluded from the Class are Defendants and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any judge to whom this case is assigned as well as their judicial staff and immediate family members.

137.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification.

138.    **Numerosity.** The Class Members are numerous such that joinder is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on

information and belief, the Class consists of more than 600,000 individuals whose PHI/PII were compromised in the Data Breach.[33]  The identities of Class Members are ascertainable through the Defendants' records, Class Members' records, publication notice, self-identification, and other means.

139.  **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendants engaged in the conduct alleged herein;

b.  Whether Defendants' conduct violated the FTCA and HIPAA;

c.  When Defendants learned of the Data Breach;

d.  Whether Defendants' responses to the Data Breach was adequate;

e.  Whether Defendants unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

i.  Whether Defendants owed a duty to Class Members to safeguard their Private Information;

---

[33] U.S. Department of Health & Human Services - Office for Civil Rights (hhs.gov)

j.  Whether Defendants breached its duty to Class Members to safeguard their Private Information;

k.  Whether hackers obtained Class Members' Private Information via the Data Breach;

l.  Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m.  Whether Defendants breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n.  Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiff and Class Members suffered because of Defendants' misconduct;

p.  Whether Defendants' conduct was negligent;

q.  Whether Defendants' conduct was *per se* negligent;

r.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

s.  Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

t.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

140.  **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the

Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

141.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

142.    **Predominance.** Defendants have engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

143.    **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

144. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

145. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT 1**</u>
**Negligence (On Behalf of Plaintiff and the Class)**

146. Plaintiff re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

147. Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

148. Defendants required Plaintiff and Class Members to submit non-public personal information to obtain healthcare services, which they then stored and maintained in its computer networks.

149. By collecting and storing this data in Defendants' computer systems, Defendants had incurred a duty of care to use reasonable means to secure and safeguard its computer property – and Class Members' Private Information held within it – to prevent disclosure of the information,

and to safeguard the information from theft. Defendants' duties included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

150.    Defendants knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendants were on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

151.    Defendants owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendants' duties included, but were not limited to, the following:

    a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.    To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.    To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    e.    To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

152.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R § 164.520(c)(1). Some or all the

healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

153.    Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

154.    Defendants' duty also arose because Defendant was bound by industry standards to protect its clients' patients' confidential Private Information.

155.    Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

156.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendants' possession.

157.    Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

158.    Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

159.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.  Failing to adequately monitor the security of its networks and systems;

c.  Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d.  Allowing unauthorized access to Class Members' Private Information;

e.  Failing to comply with the FTCA; and

f.  Failing to detect, in a timely manner, the vulnerability that led to the Data Breach of its systems.

160.    Defendants had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect their systems (and the Private Information that it stored on them) from attack.

161.    Defendants' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

162.    Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

163.    As a result of Defendants' negligence in breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

164.    Defendants also had independent duties under state laws that required them to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

165.    As a direct and proximate result of Defendants negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

166.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

167.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

168.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## <u>COUNT II</u>
**Breach of Implied Contract (On Behalf of Plaintiff and All Class Members)**

169.    Plaintiff re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

170.    When Plaintiff and Class Members provided their Private Information to Defendants in exchange for Defendants' services, they entered implied contracts with Defendants under which Defendants agreed to reasonably protect such information.

171.    Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

172.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

173.    Plaintiff and Class Members paid money to Defendants or provided their Private Information to Defendants with the reasonable belief and expectation that Defendants would use part of their earnings to obtain adequate data security. Defendants failed to do so.

174.    Plaintiff and Class Members would not have entrusted their Private Information to Defendants without the implied contract between them and Defendants to keep their Information secure.

175.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

176.    Defendants breached their implied contracts with Class Members by failing to safeguard and protect their Private Information.

177.    As a direct and proximate result of Defendants' breach of implied contracts, Class Members sustained damages as alleged herein, including the loss of the benefit of the bargain.

178.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

179.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT III
### Negligence Per Se (On Behalf of Plaintiff and All Class Members)

180.    Plaintiff re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

181.    Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information.

182.    Pursuant to HIPAA, 42 U.S.C. § 1302d, et seq., Defendants had a duty to implement reasonable safeguards to protect Plaintiff and Class Members' Private Information.

183.    Pursuant to HIPAA, Defendants had a duty to render the electronic Private Information and Private Health Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* definition of encryption at 45 C.F.R. § 164.304.

184.    Defendants breached their duties to Plaintiff and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

185.    Defendants' failures to comply with applicable laws and regulations constitutes negligence per se.

186.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

187.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would Plaintiff and Class

Members to experience the foreseeable harms associated with the exposure of their Private Information.

<u>**COUNT IV**</u>
**Breach of Fiduciary Duty (On Behalf of Plaintiff and All Class Members)**

188.    Plaintiff re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

189.    Considering the special relationship between Defendants and their clients, whereby Defendants became guardians of Plaintiff's and Class Member's PHI/PII, Defendants were fiduciaries, created by their undertaking and guardianship of the PHI/PII, to act primarily for the benefit of their clients, including Plaintiff and Class Members. This benefit including (1) the safeguarding of Plaintiff's and Class Member's PHI/PII; (2) timely notifying Plaintiff and Class Members of the Data Breach; and (3) maintaining complete and accurate records of what and where Defendants' clients PHI/PII was and is stored.

190.    Defendants had fiduciary duties to act for the benefit of Plaintiff and Class Members on matters within their customer/servicer relationship, particularly to keep secure customers' PHI/PII secure.

191.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to diligently investigate the Data Breach to determine the number of Class Members affected and notify them within a reasonable and practicable time.

192.    Defendants breached their fiduciary duties to Plaintiff and Class by failing to protect their PHI/PII.

193.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic PII/PHI Defendants created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

194.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI/PII to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

195.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

196.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigation, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

197.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR 164.306(a)(2).

198.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI/PII that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

199.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce, in violation of 45 CFR 164.306(a)(94).

200.    Defendants breached their fiduciary duties to Plaintiff and Class Members by impermissibly and improperly using and disclosing PHI/PII that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

201.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to effectively train all members of their workforces (including independent contractors and/or agents) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.520(b) and 45 CFR 164.(a)(5).

202.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

203.    Defendants breached their fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Member's PHI/PII.

204.    As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PHI/PII is used; (iii) the compromise, publication, and/or theft of their PHI/PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover

from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PHI/PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PHI/PII of customers and former customers in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of PHI/PII compromised as a result of the Data Breach for the remainder of the lives of the Plaintiff and Class Members; and (ix) the diminished value of Defendants' goods and services they received.

205.    As a direct and proximate result of Defendants'' breaches of fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer the harm and injuries alleged herein, as well emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
### Unjust Enrichment (On behalf of Plaintiff and Class Members)

206.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

207.    Plaintiff and Class Members conferred a benefit on Defendants by turning over their valuable PHI/PII to Defendants in exchange for cybersecurity measures sufficient to protect their PHI/PII from unauthorized access and disclosure. Plaintiff and Class Members did not receive such protection.

208.    Defendants fund their cyber security measures entirely from their general revenues, including from payments made to them from Plaintiff and Class Members.

209.    As such, a portion of these payments made to Defendants is to be used to provide a reasonable and adequate level of data security that follows applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is

allocated to data security is known to Defendants. Defendants have retained the benefits of its unlawful conduct, including the amounts of payments received from Plaintiff and Class Members, which payment should have been used for adequate cybersecurity practices that is failed to provide.

210.    Defendants knew that Plaintiff and Class Members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the PHI/PII of Plaintiff and Class Members for business purposes, while failing to use the payments they received for adequate data security measures that would have secured Plaintiff's and Class Members' PHI/PII and prevented the Data Breach.

211.    If Plaintiff and Class Members had known that Defendants had not adequately secured their PHI/PII, they would not have agreed to the provision of such PHI/PII to Defendants.

212.    Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

213.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (I) actual identity theft; (ii) the loss of the opportunity to control how their PHI/PII is used; (iii) the compromise, publication, and/or theft of their PHI/PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PHI/PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PHI/PII, which remained in Defendants' possessions and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect PHI/PII in their

continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

214.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

215.    Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

    a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

    b.    Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

    c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.   An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.   A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.   An award of such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for any and all triable issues in this action so triable as of right.

Dated: November 3, 2023

/s/ James M. Evangelista
James M. Evangelista
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road
Suite 245A
Atlanta, GA 30350
Tel.: 404-205-8400
Fax: 404-205-8395
jim@ewlawllc.com

Jennifer S. Czeisler (*pro hac vice* to be filed)
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
Jen.czeisler@sterlingtonlaw.com

Edward Ciolko (*pro hac vice* to be filed)
**STERLINGTON PLLC**

One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
Edward.ciolko@sterlingtonlaw.com

*Attorneys for Plaintiff*